WILLIAM CARROLL *vs.* WHAT CHEER STABLES CO.

JANUARY 5, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1) Workmen's Compensation Act. Previously Diseased Condition.*

In a petition under the Workmen's Compensation Act, while there was some evidence that petitioner, a hack driver, admitted that he had an attack of dizziness just before he fell from the hack, and that caused him to fall, there was no evidence that he had had a previous attack while driving, and there was evidence which showed that petitioner's fall was more than the mere inert collapse of an unconscious man and that it was a positive throwing of petitioner from his seat by the movement of the hack turning or lurching into the gutter toward or against the curbstone.

The decision of the Superior Court stated "the fall probably being due to dizziness or unconsciousness induced by a disease from which he was suffering" and found that the accident was one arising out of the employment:

*Held*, that the decision embodied a conclusive finding of fact that unconsciousness or dizziness was not the sole cause of the fall, and there was evidence such as to warrant the finding that petitioner received a personal injury by accident arising out of his employment and under the decision in *Jillson* v. *Ross,* 38 R. I. 145, the decision would not be disturbed.

*(2)   Workmen's Compensation Act.   Predisposing Cause.*

Although a diseased condition predisposed a workman to the accident which occurred, so that such condition was a contributing or antecedent cause of the accident, nevertheless that in itself does not prevent the happening being "an accident" which "arose out of the employment."

VINCENT, J., dissenting.

PETITION under Workmen's Compensation Act.   Heard' on appeal of respondent and appeal dismissed.   VINCENT, J., dissenting.

PARKHURST, J.   This cause comes before this court on respondent's appeal from a decree entered by Mr. Justice Tanner in the Superior Court on the 11th day of May, 1915, under the provisions of the Workmen's Compensation Act, so called, enacted by Public Laws of 1912, Chapter 831. In this decree it is recited that on the first day of December, 1914, the petitioner, William Carroll, was engaged at Providence, Rhode Island, in the employ of the respondent, What Cheer Stables Company, and had been engaged in this employment for the space of about five years.

That said Carroll was not engaged in domestic service or agriculture at the time, but was in the employ of the respondent as a hack driver and on the first day of December, 1914, while engaged in this employ, received a personal injury by accident arising out of and in the course of said employment.

That at said time the company had elected to become subject to the act and the employee had waived his right of action at common law.

That the injury was not occasioned by the willful intention of the employee to bring about the injury to himself and did not result from his intoxication while on duty.

That the cause of the injury was falling from the driver's seat of a hack which the petitioner was driving in the regular course of his employment, the fall probably being due to dizziness or unconsciousness induced by a disease from which he was suffering, the evidence showing hernia, hardening of the arteries and Bright's disease.

That the injuries were a broken right clavicle, broken ribs and shock to the nervous system, rendering the employee totally and permanently incapacitated for work and resulted in the permanent total incapacity of said Carroll.

That at the time of said injury the employee was receiving wages in the sum of thirteen ($13.00) dollars per week, working seven (7) days a week, with one day off in each four weeks.

That the amount of average weekly wages at the time of receiving the injury was ten and seventy-three one-hundredths ($10.73) dollars, and that the sum of twenty-eight ($28.00) dollars is a reasonable charge for medical and hospital services and medicines required by the employee during the first two weeks after the injury.

And that upon the above facts the What Cheer Stables Company should pay said Carroll the sum of twenty-eight ($28.00) dollars for medical services and medicines as aforesaid and the further sum of five and thirty-six one-hundredths ($5.36) dollars per week compensation, computed from the first day of December, 1914, until further order of the court, but in no event for a period in excess of five hundred (500) weeks. Costs were awarded in the sum of twelve ($12.00) dollars.

On the 13th day of May, 1915, the company filed with the clerk of the Superior Court a "claim of appeal from the *final decree* of the said Superior Court entered on the 11th day of May, A. D. 1915."

On the 27th day of May, said company filed with the clerk aforesaid its reasons of appeal which are in substance, and without stating them in full, that the decision of the justice and the decree appealed are against the law and the evidence, in various details.

The real question raised by this appeal arises from the contention of the respondent that the evidence does not show a "personal injury sustained by accident by an employee arising out of and in the course of his employment," under the language of the statute (Pub. Laws, Ch. 831, Art. I), § 1, which reads as follows:

"Section 1. In an action to recover damages for personal injury sustained by accident by an employee arising out of and in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense: (a) That the employee was negligent; (b) That the injury was caused by the negligence of a fellow employee; (c) That the employee has assumed the risk of the injury."

The respondent's brief proceeds to state its contention as follows:

"This is the section of the act which defines those industrial accidents which the legislature had under consideration and against which it sought to protect the employee. Hence, to entitle the workman to compensation, the following elements must appear (1) that the workman suffered an injury; (2) that he suffered an injury by "accident;" (3) that the injury and the accident arose 'out of' the employment, and (4) that the injury and the accident arose in the course of the employment.

"By this language the legislature intended not simply that the 'injury,' but that both the 'injury' and the 'accident' must arise out of and in the course of the employment. In the great majority of cases it would be impossible to separate the injury and the accident, so that one might arise out of the employment while the other would not. In the case before us, while we may admit for the sake of argument that the particular injury—the broken collar bone and ribs— were caused by the fall; that the fall arose out of and in the course of the employment because the petitioner at that moment happened to be sitting on the seat of his cab,— it by no means follows that the 'accident' arose 'out of' the employment. This, we believe, is where the authorities which will no doubt appear on the petitioner's brief, have gone astray. That the 'accident' occurred 'in the course of' the employment is admitted." . . . . "The respondent takes the position (1) that there is no evidence to support the finding of the presiding justice that either

the injury or the accident arose out of and in the course of the employment, and (2) that such finding was against the law since the legislature never intended that act to apply to accidents caused solely by a workman's previously diseased condition."

The only respect in which this decree is challenged by the appellant is as to the finding of fact that the petitioner "received a personal injury by accident arising out of . . . said employment;" and the appellant contends that the accident was solely due to the previously diseased condition of the petitioner and not at all to the employment.

It must be obvious that the petitioner, as the driver of a hack, seated at a height of four or five feet from the ground upon a moving vehicle is exposed to some risk of accident which would not be incident to an occupation carried on by a person seated upon the ground or upon a stationary platform. And this would be more so in case of an employee subject to attacks of vertigo or dizziness, or of temporary unconsciousness. Now although there is some evidence that the petitioner admitted that he had an attack of dizziness or unconsciousness just before he fell, and that caused him to fall, it is to be noted that there is no evidence that he had ever before had such an attack when he was driving; his only previous disability, so far as the evidence shows, had been a slight temporary disability due to displacement of his truss, when at work harnessing his horses, and which required him to lie down for a few minutes to readjust his truss; and he was also unable on account of his rupture to lift trunks on or off his hack. There is no evidence that he had at any time before the accident had any disability with regard to driving his horses when he was seated upon the carriage. But there is direct and positive evidence from a witness who saw him fall, who said, "I thought . . . that the horses ran against the curbstone and he fell off headfirst;" that "the horses was coming down the side of the sidewalk, not running, but not coming easy, on a kind of a gallop, and the first thing I see he was

pitched out headfirst on the side, that way," (illustrating); that "he was pitched up on the side, half on the sidewalk and half on the hill." This evidence shows that the petitioner's fall was more than the mere inert fall or collapse of an unconscious man (see *Lewis* v. *Globe Indemnity Co.*, Mass. Workmen's Comp. Cas., 1912-1913, p. 48; *Sanderson* v. *Same, Ib.* p. 224, 229); that it was a positive throwing or pitching of the driver from his seat by the movement of the hack turning or lurching into the gutter, toward or against the curbstone and might have happened to a driver in full possession of his senses; and although the justice of the Superior Court in his rescript does not allude to this evidence, it is to be presumed that, when he came to enter his final decree and decreed that petitioner "received a personal injury by accident arising out of" . . . "said employment," he made his finding upon all the evidence before him. We think that the evidence above quoted therefore was such as to warrant the finding of fact which is here challenged, and that under the decision in *Jillson* v. *Ross*, 38 R. I. 145 (July 2, 1915), we should not be justified in setting aside the decree upon this ground,—since the act provides that findings of fact, in the absence of fraud, shall be conclusive.

The evidence does not show, as claimed by the appellant, that the petitioner's fall was "caused solely by the workman's previously diseased condition," nor does the justice of the Superior Court so decide; the justice says in his decree "the fall probably being due to dizziness or unconsciousness induced by a disease from which he was suffering," etc. But the decree also finds that the accident was one "arising out (1) of . . . said employment;" there is at least as much evidence that the fall was due to an unexpected and accidental lurch of the hack into the gutter and towards or against the curbstone, as that it was due to dizziness or unconsciousness induced by disease. It seems to this court that the decision and the decree appealed from embody a conclusive finding of fact that dizziness or unconsciousness was not the

sole cause of the fall and that there was evidence from which the justice could find as he did that the accident arose out of the employment.

Several cases have been cited on behalf of the petitioner where it appeared that the claimant had, prior to the accident, been suffering from disease and where it appeared that the diseased condition predisposed the claimant to the accident which occurred, and where it has nevertheless been held that the claimant was entitled to recover. In a very well considered case in the English Court of Appeal, decided in 1905, under the English Workmen's Compensation Act, *Wicks* v. *Dowell & Co., Ltd.*, 2 King's Bench, Div. (1905), p. 225, it appears that a workman employed in unloading coal from a ship, who was required in the course of his duty to stand by the open hatchway through which the coal was being brought up from the hold, was seized with an epileptic fit while at work, and fell into the hold and was seriously injured; it was held that regard must be had to the proximate cause of the accident resulting in the injury, which was to be found in the necessary proximity of the workman to the hatchway; that the accident therefore arose "out of" as well as "in the course of" his employment, and that he was entitled to compensation under the act. It appeared that the employee was subject to epileptic fits; that it was his duty to stand on a wooden stage close to the edge of the hatchway; the stage being so constructed as to enable him to look down into the hold, and while standing on the stage he had to regulate the descent of the bucket into, and its ascent out of, the hold by means of a long pole, and also to give the necessary signals to the man who was working the crane; while thus engaged he was seized with an epileptic fit and fell through the hatchway into the hold and sustained very serious injuries. He had had an epileptic fit on three previous occasions. The county court judge held that the accident was due to the fit and did not arise out of the employment within the meaning of the act, and refused to award compensation. The applicant appealed. In the

Court of Appeal it was contended, as here, that "as the original cause of the applicant's fall was the fit with which he was seized, the cause was one which the man himself carried about with him, and that the damage which he sustained did not arise out of and in the course of his employment, but arose out of the idiopathic condition of the workman at the time." The court fully discusses and disposes of this contention upon principle and authority and determines that the thing which happened was an "accident" within the meaning of the act. The court, after discussing the rules and principles laid down in accident insurance cases, speaking through Collins, M. R., says, p. 229.

"But those authorities are in my judgment directly in point. A man is picked up at the bottom of the hold of a ship suffering from injuries: what is the cause of his condition? The proximate cause obviously is that he has fallen from a height. But it is suggested that if the occurrence is analyzed, it will be seen that the accident was caused by the idiopathic disease from which the man was suffering, and that therefore the accident did not arise out of his employment. At that point the authorities come in, to the effect that, although the cause of the fall was a fit, the cause of the injuries was the fall itself, and they are direct authorities that the injury in the present case was caused by an accident.

"Then did the accident arise out of the man's employment ? When we get rid of the confusion caused by the fact that the fall was originally caused by the fit and the confusion involved in not dissociating the injury, and its actual physical cause from the more remote cause, that is to say, from the fit, the difficulty arising from the words 'out of the employment' is removed. How does it come about in the present case that the accident arose out of the employment ? Because by the conditions of his employment the workman was bound to stand on the edge of what I may style a precipice, and if in that position he was seized with a fit he would almost necessarily fall over. If that is so,

the accident was caused by his necessary proximity to the precipice, for the fall was brought about by the necessity for his standing in that position. Upon the authorities. I think the case is clear: an accident does not cease to be such because its remote cause was the idiopathic condition of the injured man; we must dissociate that idiopathic condition from the other facts and remember that he was obliged to run the risk by the very nature of his employment, and that the dangerous fall was brought about by the conditions of that employment. I think, therefore, that the present case comes within the purview of the Workmen's Compensation Act, and that there is nothing in either the decision or the dicta of the learned Lords in *Fenton* v. *Thorley & Co.* 1903 Ap. Cas. 443 (1) which in any way qualifies the view that I have endeavored to express. The appeal must be allowed.

"Mathew, L. J. I am of the same opinion. The case affords an illustration of the rule that one should look to the immediate, and not to the remote, cause. In this case the immediate cause of the injury was the fall: I see no reason why we should hold that there was not an accident within the meaning of this statute. The true mode of dealing with the case is shown by a reference to the insurance cases that were cited during the argument. In *Fenton* v. *Thorley & Co.* (2) Lord Macnaghten said: 'One other remark I should like to make. It does seem to me extraordinary that anybody should suppose that when the advantage of insurance against accident at their employers' expense was being conferred on workmen, Parliament could have intended to exclude from the benefit of the act some injuries ordinarily described as 'accidents' which beyond all others merit favourable consideration in the interest of workmen and employers alike.' If we apply that view to the particular case, and treat the claim as an action brought upon a policy of insurance against accidents arising out of the employment of the assured, there can be no question that such a policy would cover the case. In my opinion we ought not to go back along the train of circumstances and trace

the accident to some remote source when it is plain that the man was in fact injured by falling from the place where he was standing, and where it was his duty to stand, in discharge of his duty to his employer.

"Cozens-Hardy, L. J.    I agree, and have little to add.    It seems plain to me on the authorities that what happened here was an 'accident.'    It is also plain, and indeed is not contested, that the accident happened in the course of the employment; the only difficulty is whether it arose 'out of' the employment; on the whole I am of opinion that it did. If I could adopt the view that has been pressed upon us, that the employer is not liable for the remote consequences of a disability which the workman brings with him to his work, I should come to a different conclusion; but I think the truer view is that a man always brings some disability with him; it may be a disability arising from age; it may be of some other nature.    A workman who is put in a dangerous position in order to do his work is more liable to an accident by reason of the disability which he brings with him than he would otherwise be.    Again, an old man is inherently more likely to meet with an accident than a young one, but an employer could not excuse himself on the ground of the man's age.    The same consideration applies to a tendency to illness or to a fit; and if a man with such a tendency is told to go to work in a dangerous position and there meets with an accident, the accident none the less arises out of his employment because its remote cause is to be found in his own physical condition.

*"Appeal allowed."*

The case of *Wicks* v. *Dowell & Co.*, *supra*, was followed in the case of *Driscoll* v. *Cushman's Express Co.*, Mass. W. C. C. (July 1, 1912-June 30, 1913, pp. 125, 130), where the driver of an express wagon, employed by the defendant, while driving his wagon, suffered a fainting fit, or an "epileptiform attack," falling from his wagon and fracturing his skull, dying from the effect of the fracture.    It was held by the

Industrial Accident Board, in review, and in confirmation of the decision of the Committee of Arbitration, that the employee was exposed to a substantial and increased risk owing to his occupation, that the injury arose out of and in the course of his employment, and that the dependent mother was entitled to compensation.

*Wicks* v. *Dowell, supra,* was cited by the court with apparent approval in *Fennah* v. *Midland, Etc., Ry.* 45 Ir. L. T. 192, 4 B. W. C. C. 440, 442, a case decided in the Court of Appeal, Ireland, 1911; and has been frequently cited in argument both in the English Court of Appeal and in the House of Lords. No case has been cited to us in which that case has been criticised, modified, doubted or overruled.

A number of cases have been cited to us involving the same general principle that where the previous diseased condition or temporary illness of the employee is a contributing or antecedent cause of the accident, nevertheless the employee may recover. See *S. S. Swansea Vale* v. *Rice,* 4 B. W. C. C. 298, a case of temporary illness, contributing to the accident of falling overboard from a vessel. *Fennah* v. *Midland, &c. Ry.* 4 B. W. C. C. 440, where an engine driver, at work on his engine while stopped at a station, tightening up a nut, fell to the permanent way and died from the effects of the fall; and where it appeared that he had previously had fainting fits; it was held that recovery could be had; that it was an accident arising out of his employment; *Ismay* v. *Williamson,* 1 B. W. C. C. 232 (House of Lords), where the accident was a heat-stroke from a furnace which happened to a hand employed in the engine-room, and who was shown to have been in poor physical condition, not fit to stand the heat; *Clover Clayton & Co.* v. *Hughes,* 3 B. W. C. C. 275 (House of Lords), a case of death of a workman who had a very serious aneurism of the aorta, which ruptured while he was engaged in his ordinary occupation; disease of long standing; *M'Innes* v. *Dunsmuir & Jackson,* 1 B. W. C. C. 226 (Court of Session, Scotland), where a workman having hardening of the

arteries, by over exertion brought on cerebral hemorrhage, which was more likely to occur in his case on account of the hardening of the arteries; *Maskery* v. *Lancashire Shipping Co.* (1914), Stone's W. C. & Ins. Cas. 290 (Court of Appeal, England), case of death from heat-stroke suffered by a laborer in the engine room of a steamer in the Red Sea, deceased being physically unfit for the work which involved exposure to extreme heat; citing *Ismay* v. *Williamson, supra.* See, also, *Morgan* v. *Zenaida,* 2 B. W. C. C. 19, and *Aitken* v. *Finlayson, &c.* (1914), Stone's W. C. & Ins. Cas. 398.

We are of the opinion that the decree appealed from in this case is fully supported by the evidence; and under the principles of law so clearly set forth in the above cited cases, with which we find no reason to dissent, we find that what happened to the petitioner was an "accident" under the terms of the act, and that the accident "arose out of  .  .  . the employment."

The appellant cites a few cases which do not seem to this court to have any weight in this connection, since the court in each case found that injury or death of the employee did not "arise out of the employment," but arose from natural causes to which anyone not so employed would have been equally subject,— *Sheldon* v. *Needham* (1914), Stone's W. C. & Ins. Cas. 274; *Rodger* v. *Paisley School Board,* (1912), Gordon's W. C. Cas. 157; *Robson* v. *Blakey* (1912), Gordon's W. C. Cas. 86; *Butler* v. *Burton-on-Trent Union, Ibid,* 222; *Thackway* v. *Connelly & Sons,* 3 B. W. C. C. 37, and *Nash* v. *"Rangatira"* (owners) (1914), Stone's W. C. & Ins. Cas. 490; in the latter case the accident and death were found to have arisen out of intoxication and not out of the employment.    We have carefully examined all of these latter cases and find nothing therein to disturb our conclusions.

Our decision is that the decree appealed from be affirmed; that the appeal be dismissed and the cause remanded to the Superior Court for further proceedings.

VINCENT, J., dissenting.   I am unable to agree with the majority of the court in affirming the decree of the Superior Court and dismissing the respondent's appeal.

The petitioner, at the time of the accident, was in the employ of the respondent company as driver. of a vehicle commonly known as a hack or hackney carriage, such employment requiring him to occupy the elevated seat common thereto.   On the day of the accident, while the petitioner was driving along one of the public streets, he became wholly or partially unconscious, or was seized with dizziness or vertigo, whereupon he fell from his seat to the ground, sustaining some injuries.

It is not disputed that the petitioner had, for a considerable period prior to the time of his accident, been in a condition of health which might at any moment cause him to become unconscious or dizzy to an extent which would deprive him, temporarily at least, of physical control.

The majority opinion proceeds upon the theory that there was some testimony produced in the court below, showing that the fall of the petitioner, from his seat on the hack, was occasioned by a sudden contact of the wheel with the curbstone.   The testimony referred to is that of Mrs. McKenna, who at the time of the accident, was sitting at her window and viewed the scene across two streets.   On examining her testimony, bearing in mind that the burden of proof is upon the petitioner to show that the accident arose out of the employment, I find that it amounts to nothing.   She says in her direct examination: "I *thought* he stumbled against the curbstone; that the horses ran against the curbstone and he fell off head first."   This in itself is not testimony tending to prove that the wheel of the hack came in contact with the curbstone.   It is simply the way in which the witness, viewing the situation from a distance, imagined that the fall must have been occasioned.   Later, in cross-examination any doubt about her testimony is disposed of when she says, in answer to the question, "You didn't see anything happen to the hack or to the horses or anything

except Mr. Carroll pitch off from the hack, did you ?"
"That is all, that is all I noticed then." This testimony not
only fails to sustain the burden of proof before mentioned,
but it is not testimony from which it can be reasonably
assumed or inferred that the wheel of the hack came in
contact with the curbstone at all. Mrs. McKenna did not
see the wheel strike the curbstone and she does not claim
to have seen anything of the kind. The petitioner does not
claim that his wheel struck the curbstone or went into the
gutter, in fact, he says he does not remember any jumping
of the horses or hitting any stone or ditch. Upon this
state of the testimony how can it be assumed that the
proximate cause of the accident was the contact of the wheel
with the curbing of the street ? It is also evident that the
Superior Court did not consider this evidence sufficient
when it said, "That the cause of such injury was falling from
the driver's seat of the hack which the petitioner was driving
in the regular course of his employment, *the fall probably
being due to dizziness or unconsciousness induced by a disease
from which he was suffering* . . . "

Further than this the petitioner told Mr. Stockard, in
speaking of the accident, that he felt a dizzy spell coming on.
That he made such a statement to Mr. Stockard the peti-
tioner nowhere denies, but in his direct testimony he says
that he lost consciousness when he fell.

There is some testimony on the part of the petitioner that
in his descent from the hack he came in contact with some
portion of the outfit, presumably the whiffletree or crossbar,
from which it might be argued that his realization of such
an occurrence tended to show that he was not wholly un-
conscious at the time of the accident. It is not, however,
important to ascertain the exact degree of mental power
or physical control which the petitioner possessed at the
time of and immediately preceding his fall. Whether he was
partially or wholly unconscious or simply dizzy, without
being unconscious at all, is not important in this considera-
tion. It cannot be seriously or reasonably claimed that his

fall was occasioned otherwise than by a sudden seizure of some kind induced by his physical condition. The court below, in its findings of fact, reached that conclusion. Furthermore, it is not claimed that the physical condition of the petitioner was brought about or affected by his employment or that his employment in any way operated, in connection with his diseased condition, to bring about or produce the particular attack which caused this fall.

The statute regulating the compensation of workmen provides that such compensation is only payable in cases where the injuries sustained arise out of and in the course of the employment and it is generally conceded by the authorities that the burden is upon the petitioner to show that his injuries arose both out of and in the course of his employment. There is no question in the present case but what the accident occurred in the course of the employment, but did it arise out of the employment ? It is quite clear to my mind that it did not.

It seems to me to be desirable, not to say necessary, to determine first, what is the proximate cause of the accident, and second, whether or not there is any relation between such proximate cause and the employment in which the petitioner was engaged.

In the old case of *Scott* v. *Shepherd*, decided in 1770, and reported in 2 Blackstone, 892, which is more popularly known as the "Squib" case, it was held that trespass and assault will lie for originally throwing a lighted squib which after having been thrown about in self-defence by other persons at last put out the plaintiff's eye. The question there was whether the action could be maintained against the person who first threw the squib and it was held that such action could be maintained. In a recent law publication called the "Docket," under date of December, 1915, I find the following comment upon the Squib Case: "Many, many cases have been bottomed on the Squib Case, that unhappy accident seeming to have an illustrative value beyond any other instance of causal connection ever brought

to the attention of court or counsel. The most recent, of note, is *Salmi* v. *Columbia & Nehalem River Railroad Co.,* 146 Pacific Reporter, 819, and comes from Oregon, where the complainant, a woman, lived near a railroad right of way on which the railroad company exploded a 'large and unsafe blast,' so greatly frightening complainant that she swooned, and swooning fell, and falling, injured herself, sustaining a rupture. In refuting the contention that she could not recover for injuries from fright alone, Burnett, J., in an able opinion, after referring to the analogy to the noted Squib Case, says: 'Likewise in this instance the explosion of the blast naturally produced the mental state of fright, the fright the faint, the faint the fall, the fall the fracture of the abdominal wall, upon which the plaintiff rests her cause of action.' "

The law as laid down in the Squib Case has continued to be the law in England and this country down to the present time and it determines that a defendant who exerted the original force is responsible for the injury, such force having been transmitted to the plaintiff through a series of acts which were the direct consequence of the original act. In other words, the original act was the proximate cause of the injury to the plaintiff.

In a case of this character the proximate cause is always that cause, which, acting through a natural sequence of events causes the injury. The cases furnish a multitude of definitions of proximate cause which, while they are couched in different language, are substantially the same in substance as, for example, "The proximate cause is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss;" again, "The proximate cause is the dominant controlling one and not those which are mere incidents;" and further, "The proximate cause of an accident is a cause without which the accident would not have occurred." See 5 Words & Phrases, 5762 and cases cited.

Applying this principle to the case in hand the conclusion is inevitable that the unconsciousness or dizziness of the petitioner was the proximate cause of his accident. It was the one thing without which the accident would not have happened; it was the dominant cause and the subsequent fall and contact with the ground were simply incidents or events which naturally and necessarily followed. This being so it cannot be reasonably argued, under the evidence in this case, that as between the employment and the cause of the accident there was any relation whatsoever and therefore it cannot be said that the injuries of the petitioner arose out of his employment.

The majority opinion in support of its conclusions cites ten cases. Two of the cases cited cannot be distinguished from the case before us, namely, *Wicks* v. *Dowell & Co.*, 2 K. B. 225, and *Driscoll* v. *Cushman*, Mass. W. C. C., June 30, 1913, pp. 125, 130. The remaining eight cases cited are easily and readily distinguishable.

The case of *Fennah* v. *Midland, &c., Ry.*, 4 B. W. C. C. 440, was that of an engine driver who was tightening up a nut upon his engine while his train was at the station. He was later found lying between the engine and platform and died in a few minutes. There was evidence showing that on three previous occasions when the train was at a station the deceased had fainted, but a few days prior to the time of his decease he was examined by a physician of the company and found physically fit. This case is materially different from the case at bar, there being no testimony whatever that he suffered a fainting fit at the time of his death or that the proximate cause of the accident was anything else than the fall.

The case of *Ismay* v. *Williamson*, 1 B. W. C. C. 232, was a case in which a seaman employed as a trimmer on board ship whilst engaged in drawing ashes from the bottom of the ship's furnace had a heat stroke from which he died. In *McInnes* v. *Dunsmuir, &c.*, 1 B. W. C. C. 226, a workman, in the course of his ordinary and usual employment, over-

exerted himself and brought on an attack of cerebral hemorrhage. In *Clover, Clayton & Co.* v. *Hughes*, 3 B. W. C. C. 275, a workman suffering from aneurysm of the aorta was doing his work in the ordinary way by tightening a nut with a spanner. This ordinary strain caused a rupture of the aneurysm, resulting in death. In *Maskery* v. *Lancashire Shipping Co.*, 1914, Stone's W. C. & Ins. Cas. 290, an engineer while working in the engine room of a steamer in the Red Sea sustained a heat stroke from the effects of which he died. In *Aitken* v. *Finlayson, &c.*, 1914, Stone's W. C. & Ins. Cas. 398, a workman running to the scene of an accident and thence to telephone for a doctor by his exertion brought on a fit of apoplexy.

It will readily be observed that in each of the last six cases the death or injury was brought about by influences directly proceeding from the employment as, for instance, where a man suffered a stroke from the heat of a furnace about which and in connection with which he was employed. All these last mentioned cases are decidedly different from the case at bar where there is no proof whatsoever that the impaired physical condition of the petitioner was due to or was even aroused by his employment.

In the case of *S. S. "Swansea Vale"* v. *Rice*, 4 B. W. C. C. 298, the chief officer of a steam vessel fell overboard during his duty on deck. Some two or three hours prior to the accident he had gone below, complaining of headache and giddiness, had taken a dose of castor oil and returned to his duty on deck. There was, however, no testimony nor any other circumstances from which it might be inferred that the officer was suffering from giddiness at the time of the accident and that case is therefore materially unlike the one which I am considering here.

The case of *Driscoll* v. *Cushman & Co.*, Mass. W. C. C., June 30, 1913, pp. 125, 130, which follows to some extent the case of *Wicks* v. *Dowell*, 2 K. B. 225, also differs from it in some respects. The board of arbitration there held that the employed was exposed to a substantially increased risk

owing to the position in which he had to work, meaning that as a driver of an express wagon he occupied a more elevated position than he would have occupied in some other employment.

It is evident that the more elevated the position of the workman the more likely he is to be injured in case he falls, but that does not affect the principle. The same principle should govern whether the person suffering the accident stands in one place or another so far as the determination of the proximate cause of the accident is concerned. The degree to which he may be injured in one place, as compared with the possible extent of his injuries in another, does not in any way assist in the determination as to what was the proximate cause of the accident or whether the accident arose out of the employment. All that arises out of the employment is that the consequences of the fall are more serious, but the fall itself does not arise out of it. It is wrong to disassociate the petitioner's dizziness or unconsciousness and say that though the one was not an accident the other was.

This leads to the discussion of the case of *Wicks* v. *Dowell*, 2 K. B. 225, which as before stated cannot be distinguished from the case at bar. In that case a workman, employed in unloading coal from a ship, was standing in the course of his duty by an open hatchway through which the coal was being drawn up from the hold. He was seized with an epileptic fit and fell into the hold and was seriously injured. The court held that the proximate cause of the accident was to be found in the close proximity of the workman to the hatchway and that the accident therefore arose out of his employment. As we have seen from the authorities cited, the proximate cause is that cause without which the accident would not have happened. The proximate cause is that cause which through a natural sequence of events results in the injury. There was no claim in that case that the epileptic attack was brought about or induced by the employment. But it was nevertheless the proximate cause of the accident, because without it the accident would not

have happened.    It was the one thing operating through a natural sequence of events that led to the injury.    Between such proximate ·cause and the employment there was absolutely no relation whatsoever and it seems to me that to follow that case is to adopt and perpetuate a patent absurdity.

The case of *Wicks* v. *Dowell & Co.*, *supra*, decided in 1905, has not always been followed by later decisions of the English courts.    Thus in the case of *Butler* v. *Burton-on-Trent Union*, 5 B. W. C. C. 355 and 1912, Gordon's W. C. Cas. 222, decided by the Court of Appeals in 1912, it appeared a workhouse master, while on duty in the evening, was sitting smoking at the top of a flight of steps.    He was suffering from tuberculosis and while seized by a fit of coughing became dizzy and fell down the steps from which fall he sustained injuries.    The court said:    "It has been decided that an accident 'arising out of' means some risk reasonably incidental to the employment; that the man is more exposed to the particular risk than other persons in the community. . . . There is nothing peculiar in the employment which renders the risk greater than that to which ordinary persons are exposed. . . .

"The place was not a dangerous place; the man was neither more nor less liable to fall because he was a workhouse master.    These considerations are sufficient.    The accident did not arise out of the employment in the sense that it was due to the nature of the employment or to anything to which the employment required him to expose himself.

"The provision that the accident must be an accident arising out of the employment has the meaning that the accident must arise out of some risk reasonably incidental to the employment, in the sense that the man who meets with the accident must have been exposed in the course of his employment to some risk additional to those of other members of the public.    Counsel for the respondent admitted that the accident in this case might just as well have happened when the deceased was sitting in his office at his desk; and

applying the test I have stated it is clear that the accident in no sense arose out of the employment. There was nothing peculiar to his employment which rendered the risk of this accident happening greater than it would have been otherwise. It is not as if he was engaged in any task which was likely to render his coughing more dangerous or more frequent. In these circumstances I think the accident was brought on by the tubercular nodule which caused the fit of coughing. The coughing in its turn produced giddiness, and owing to the giddiness the man fell. I think we should be extending the principles of the act beyond reason, principle, or authority if we were to hold here that the accident arose out of the employment."

While the workhouse master was not compelled to sit at the head of the stairs, still he was acting in the course of his employment, and his presence at that particular place was as much in the performance of his duty as would have been the case had he been in another part of the building.

It is impossible to reconcile these two cases or to arrive at any other conclusion than that the court in the latter case has absolutely rejected the view taken in *Wicks* v. *Dowell & Co.*

The case of *Nash* v. *"Rangatira,"* Stone's W. C. & Ins. Cas. 490; 3 K. B. 1914, 978 was, as the reference indicates, decided in 1914 and was an appeal from an award under the Workmen's Compensation Act made in favor of the dependents of one Nash. Nash was employed as a seaman on the steamship "Rangatira" which at the time of the accident was moored to a pier. Late one night, Nash, who had been ashore, returned to the ship apparently intoxicated. He walked on to the gangplank for the purpose of boarding the ship, lost his balance, fell off, and was killed. The trial judge found that the primary cause of the accident was the man's intoxicated condition, but that the accident would not have happened had he not been at the time mounting the gangplank, an incident in the performance of his duty in returning to the ship. Hence, he was under a special risk

and compensation was awarded. This case was decided on the question as to whether the accident arose out of the employment and the court said: "In one sense, whenever there is an accident to a drunken man whilst he is in the ambit of his employment it may be said that the accident arose out of the employment because, but for his being in the place where the accident occurred, the man's drunken condition would have been immaterial. Take, for instance, the case where a man's work causes him to be with machinery or in any other dangerous place; it may be said that his employment took him there, and that if he had been at home drunk he would have been able to lie on the floor till he was sober. In this way it may be said that there was an added risk; but in my opinion the accident does not arise out of the employment in such circumstances. It is not sufficient that a drunken man should meet with an accident in the ambit of his employment. In the present case the accident did not arise out of the deceased man's employment."

If it is sought to distinguish the above case from the one before us on the ground that a man intoxicated is in no condition to perform the duties for which he was employed, and hence technically he is doing nothing in the performance of his employment, it may be said that the same is true of an individual who becomes unconscious through disease. So far as the employment is concerned, drunkenness and Bright's disease, as causes of a fall, are on the same footing. The sailor was required to mount the gangplank to return to the boat and thus was in the performance of his duty. His fall, however, was caused by the drunkenness which had no relation to his employment. This case, as well as the foregoing case of *Butler* v. *Burton*, &c., not only fails to follow the case of *Wicks* v. *Dowell* & *Co.*, but is distinctly at variance with the principle and theory upon which the latter is based.

In the case of *Robson* v. *Blakey*, 1912, Gordon's W. C. Cas. 86, a plumber engaged in laying pipes in a trench on a hot day was seized with heat apoplexy. He was required

to bend over his work and consequently got his back heated. The Sheriff Substitute found an accident arising out of the employment and awarded compensation. This however was reversed on appeal and it was finally held that the accident did not arise out of the employment. The Lord President stated in the course of his opinion, "I admit that upon the decided cases there has been a fairly formidable argument presented in favor of saying that this is an accident arising out of the employment." Certainly in that case the position of the petitioner was much stronger than in the case of *Wicks* v. *Dowell & Co.*, and much stronger than that of the petitioner in the case at bar. The petitioner in *Robson* v. *Blakey*, by the nature of his employment, being obliged to work in a trench perhaps somewhat shielded from the normal circulation of the air and in a stooping position, exposing his back to the direct rays of the sun, might argue with far more force than the petitioner here that his difficulty arose out of his employment.

For these reasons and upon the authorities cited and discussed, I am unable to concur in the conclusion of the majority opinion which seems to me to ignore the long and well established rule for determining the proximate cause of an accident and to hold that a petitioner is entitled to compensation where as between the proximate cause and the employment there is no relation.

*Mumford, Huddy & Emerson, E. Butler Moulton,* for petitioner.