GEORGE T. FISHER's (dependent's) CASE.

Suffolk.　March 10, 1915. — April 1, 1915.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act. Proximate Cause.*

Where a workman who already was subject to an affection of the valves of the heart and who earlier in the day had been engaged in heavy lifting and in carrying two buckets of water at a time up a slight incline, so that his heart muscle was tired and exhausted, suddenly fell to the ground after lifting a bag of coal weighing one hundred and fifty pounds and died of heart disease after about

five minutes of unconsciousness, and where, at the hearing before an arbitration committee upon a claim by his dependent widow under the workmen's compensation act, a medical examiner testified that the employee died from debilitation of the heart caused by the abrupt lifting of the load, it was *held*, that a finding was warranted that the injury that caused the workman's death arose out of and in the course of his employment.

PIERCE, J.   This is a claim under the workmen's compensation act.   The insurer contends that the finding of the majority of the arbitration committee, as affirmed by the Industrial Accident Board and in turn by the Superior Court, that the employee's death was caused by an injury arising out of and in the course of his employment, is not supported by the evidence reported. As all the material evidence is reported this contention is open. *Herrick's Case*, 217 Mass. 111.

On the morning of the day he died the deceased had been at work helping to erect a stone crusher.   This work involved some heavy lifting.   About noon time, preparatory to the unloading of a steam roller from a railroad flat car, he made six or seven trips from the car to a pump about four hundred feet away, and in each instance, after filling two buckets with water at the pump, he returned to the car carrying the filled buckets up a slight incline. Upon his return he passed the buckets and contents to a man standing on the flat car.

He then undertook to carry from a wagon to the flat car bags of coal, each weighing approximately one hundred and fifty to two hundred pounds.   The first to be taken was handed to him and carried by him to the car; the next bag was rested by the passer upon the rim of a wagon wheel.   As the decedent reached to take this bag from the wheel the helper turned to attend to some other duty; he did not see what the deceased further did, but within a minute saw him lying on the ground in a dying condition.   He (the decedent) was breathing, but did not speak, and died within five minutes.

The medical examiner of the district where the death occurred reported, and it is not disputed, that the death was due to heart disease.

At the hearing before the arbitration committee the examiner stated that the story told him on the day the decedent died differed from the testimony given at the hearing, in that the story then was that the decedent, after lifting a bag of coal weighing from

one hundred and fifty to two hundred pounds, suddenly fell to the ground, gasped, "never moved an arm or an eyelid, . . . had not breathed at all or moved a muscle," while at the hearing the testimony was to the effect "that he lived five minutes but was unconscious." He further testified that if the decedent had not breathed once, "he would ascribe the lifting of the load of one hundred and fifty to two hundred pounds to be the cause of death;" that "if he lived five minutes, there are two diagnoses. One would be a cerebral embolism, thrombus or hemorrhage; the other would be an acute dilatation of the heart that was not sufficient to stop the heart immediately, and would be due to the lifting of the load weighing one hundred and fifty or two hundred pounds, or even less." He also testified that "it was apparent that this final exertion was of a character to put a maximum of work upon his [the decedent's] heart, and assuming a diseased heart muscle already tired or exhausted, that would be a sufficient cause for the inability of the heart to perform its work so that death resulted." He finally stated that "he did not mean that in his mind there was a doubt under all the circumstances, and that under all the circumstances he still held to his opinion that it was exertion. 'I am simply taking all the facts in the case and rendering an opinion, and my opinion is that the man died of debilitation of the heart caused by the abrupt lifting of the load. The lifting of the load was the contributing cause — an important factor.'"

Dr. John P. Bradford testified that he had treated the decedent in 1910 for acute articular rheumatism; and that "physicians look for affection of the valves of the heart in cases of acute inflammatory rheumatism." Dr. Thomas F. Aiken, called as an expert by the insurer, testified that "a man who had an acute attack of articular rheumatism invariably has a heart disease of the valvular type following. It is expected in almost every case. When the valves have become crimped and the heart weakened thereby, it would naturally be expected that heart disease would cause death either at one time or another."

The testimony of the two physicians justified the medical examiner's assumption that the decedent's heart muscle was tired and exhausted before and at the time of his entry upon his last labor and made reasonable his opinion that the decedent's final exertions

were under all the circumstances a sufficient cause for the inability of the heart to perform its work so that death resulted.

It is impossible to say that there was no evidence upon which the finding could be made. The result is that the decree of the Superior Court must be affirmed. *Brightman's Case, ante,* 17.

*So ordered.*

*C. L. Allen,* for the insurer.

No counsel appeared for the dependent widow.