[S. F. No. 8267.   In Bank.—November 22, 1917.]

CASUALTY COMPANY OF AMERICA (a Corporation),
    Petitioner, v. INDUSTRIAL ACCIDENT COMMIS-
    SION OF THE STATE OF CALIFORNIA et al.,
    Respondents.

WORKMEN'S COMPENSATION ACT — MASTER AND SERVANT — EMPLOYER'S
    LIABILITY.—Under the Workmen's Compensation Act of this state
    an employer cannot be held liable for accidental injuries unless the
    accident arises out of and in the course of the employment.

ID.—EMPLOYER'S LIABILITY—EVIDENCE—BURDEN OF PROOF.—It devolves
    upon the claimant who seeks compensation under the Workmen's
    Compensation Act for accidental injuries to establish the fact that
    such injuries arose out of and in the course of the injured person's
    employment, by evidence from which such a conclusion is fairly in-
    ferable.

ID.—MASTER AND SERVANT—EMPLOYER'S LIABILITY—PLACE WHERE IN-
    JURY OCCURRED—FALL THROUGH ELEVATOR SHAFT ON FLOOR WHERE
    INJURED PERSON NOT EMPLOYED.—Where an employee was killed by

falling through an elevator shaft on a floor of the employer's prem-
ises where he was not employed nor called by any duty of his em-
-ployment, an award of the Industrial Accident Commission of com-
pensation was not justified.

APPLICATION for Writ of Review to review and annul an award of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

D. Hadsell, Joe G. Sweet, and E. A. Ingalls, for Petitioner.

Christopher M. Bradley, for Respondents.

ANGELLOTTI, C. J.—This is a proceeding in *certiorari* to review an award made by the Industrial Accident Commission in favor of Anna I. Anderson, widow of John A. Anderson, on the theory that the death of the latter was the result of injury received by him in the course of and arising out of his employment by the National Ice and Cold Storage Company, a corporation, the petitioner being the insurance carrier of said company. The award is assailed on the ground that there was not sufficient evidence to sustain the finding of the commission that the injury arose out of and happened in the course of his employment.

Anderson was fatally injured during the evening of July 22, 1916, while on duty on the employment premises as an employee of the Ice and Cold Storage Company, by falling from one of the upper floors of the company's building down the elevator shaft of a small platform elevator, used by employees, to the basement. The commission found that "said employee being about to use an elevator on the employer's premises, stepped into the elevator shaft and fell to the bottom of the shaft, the elevator having been moved the moment before by another employee, unknown to said employee Anderson." The elevator was operated by the employee having occasion to use it, and could be brought to any particular floor by one on that floor by means of the rope by which it was operated, unless held in place or locked by a device thereon.

The evidence, we think, shows without substantial conflict that the employee who moved the elevator just before the accident, one Brigham, was on the top floor of the building,

which he called the third floor, and that he was moving it up to that floor from some lower floor at which Anderson had just left it for some purpose, and was there attempting to use it again, when he fell. In other words, Anderson was not on the top floor when he attempted to use the elevator, but was on some lower floor. The evidence of Brigham, whose work was wholly on the top floor, was clear and positive to the effect that while there he had occasion to go to the first floor and went to the elevator shaft, rang the bell to warn others of his intended use of the elevator, and pulled the rope to bring the elevator up to that floor. He saw no sign of the presence of deceased at the time. We read the finding of the commission that "the deceased *stepped into the elevator shaft* and fell to the bottom of the shaft, the elevator having been moved the moment before by another employee" as evidencing their conclusion that deceased stepped into the shaft *below* the elevator, owing to the same having been just moved *up* the shaft by Brigham. In other words, they concluded that deceased was not then on the top floor. The only possible doubt as to this being the fact arises from the evidence as to a declaration made by the deceased to his wife the day after the injury, and one to his brother-in-law within three or four days after the injury. The latter testified that he asked deceased how the accident occurred and he said: "I was on the third floor and took the elevator to come down. I stepped down below the third floor, and just as I was stepping on the elevator again, someone pulled the rope, and I fell and lost my balance." The wife testified that he said to her "that he was on the third floor and as he took the elevator to go down, he stepped down between the elevator and the third floor, and just as he stepped down someone pulled the rope and he lost his balance and fell." What he meant by the "third floor" does not clearly appear, and the declarations are very uncertain and vague as to just how the accident occurred. In any event, as before stated, we think the finding of the commission substantially disposes of any theory that deceased was attempting to get on the elevator at the top floor, and is in accord with the clear and positive testimony of Brigham that deceased was then on a floor below the top floor, and about to take the elevator therefrom. We have discussed this matter at some length, because we consider it a vital factor in the case.

The deceased was employed as a "dump tender" or "ice puller," his duty being to handle ice for storage and shipment on the ground floor. The ice was manufactured above and sent to this ground floor by an elevator, where it was taken in charge by deceased and others in that department. Deceased had no expressly assigned duty which would take him to any other floor of the plant. However, both deceased and others working in the same line did occasionally go to the top floor for the purpose of ascertaining there from the person in charge whether any more ice was to be sent down, and if so, how much. We may assume for the purposes of this decision that if deceased was on such an errand at the time of the accident, and was then taking the elevator at the top floor to return to the ground floor, it might be held that he was acting in the course of his employment and that the accident rose out of his employment. But, as we have seen, it must be held that he was not taking the elevator at the top floor, and there is not a scintilla of evidence to indicate that he was on any such errand. The accident occurred during the evening of Saturday, July 22, 1916, an hour or so before the end of decedent's shift. Decedent had taken off his working garb and had on his street clothes at the time. The object of his leaving the ground floor and going to an upper floor is not indicated by any of the testimony. There is not a suggestion that any duty of his employment then called him from the ground floor, except in so far as it is suggested that he might have gone to the top floor to ascertain if any more ice was to be sent down. But even this cannot account for his presence on a lower floor and his attempt to take the elevator therefrom. Brigham testified that shortly before the accident, from the top floor he saw deceased take the elevator and come up and get off at a lower floor, and go out of his sight. This floor he said was not one of the ice floors, but the floor on which was the "cold-storage room," "where they store produce or anything that they had in storage." It is not pretended that any duty of his employment called decedent to that floor, or that he had any right to be there. Brigham substantially testified that decedent did not come to the top floor at all on this occasion.

An employer cannot be held liable under our compensation act unless the accident arises out of and in the course of the employment, and of course it devolves on a claimant to estab-

lish this fact by evidence from which such a conclusion is fairly inferable. As is stated by learned counsel for respondent, "it is not always an easy matter to define the ambit of the employment and to draw a strict line about the duties, both expressly assigned and also the activities expected and permitted, incidental to assigned duties." But here, in view of the admitted facts, considered in connection with what we deem established by the record as to the situation of deceased at the time of the accident, there appears no warrant for holding that the accident arose out of and in the course of the employment. It happened during the hour when deceased was obligated to be on duty, and also on the premises of the employer, but the record negatives any inference that decedent in leaving and going away from the floor where it was his business to be, was engaged on any mission having any connection, direct or indirect, with the service for which he was employed.

The award of the Industrial Accident Commission is annulled.

Sloss, J., Melvin, J., Shaw, J., Henshaw, J., and Victor E. Shaw, J., *pro tem.,* concurred.