[Civ. No. 2454.  Second Appellate District.—January 16, 1918.]

## JOHN A. ROEBLING'S SONS COMPANY (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Workmen's Compensation Act—Injury in Employment—Burden of Proof. — Under the Workmen's Compensation Act, the burden of proof that the injury for which compensation is asked was suffered in the course of the employment is on the claimant.

Id.—Theoretical Conclusions.—Where various theoretical conclusions may be drawn from the state of facts established, each being equally plausible, some indicating that the injury may have arisen out of the employment, and others that the misconduct of the person injured was the producing cause, then it may not be said that the evidence is sufficient to sustain the case of him upon whom the burden of proof rests.

Id.—Different Conclusions from Evidence—Right of Commission.— If different conclusions may rationally and fairly be drawn from the evidence, one sustaining the right to compensation and the other being opposed thereto, the Industrial Accident Commission is at liberty to adopt the conclusion favorable to the claim, and its conclusion is beyond the scope of review by the supreme court. Where, however, there is no substantial evidence reasonably warranting an inference favorable to the claim for compensation, and any finding to the contrary is necessarily based on mere surprise, speculation, or conjecture, an award of compensation will be annulled.

Id.—Evidence — Inference Favorable to Compensation Unwarranted.—An award of compensation made to the widow of a night watchman, who met his death from inhaling gas, is unwarranted, where the uncontradicted evidence indicates, if choice is to be made between conflicting speculative deductions, that the deceased willfully stepped aside from the performance of his duties which his employment laid upon him and invited by direct action on his part the occurrence of the detrimental cause which produced his death.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Second Appellate District to annul an award of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

Redman & Alexander, for Petitioners.

Christopher M. Bradley, for Respondents.

JAMES, J.—Petitioners herein seek to have annulled an award made in favor of Ellen J. Bundshu by the Industrial Accident Commission. Said Bundshu is the alleged widow of Joseph G. Bundshu. The commission determined that Bundshu, who died on or about the tenth day of December, 1916, came to his death through accidental means while he was in the employ of petitioners Roebling's Sons Company. It is the contention of petitioners that the award cannot be sustained; that, first, it was not shown that the death of Bundshu was produced by causes arising out of his employment; second, that it was not shown that Ellen J. Bundshu was the widow of the decedent.

At the time of his death Bundshu was employed as night watchman and janitor in the Roebling's Sons Company's plant in the city of Los Angeles. His duties were to keep watch over the plant during the night-time and to do necessary janitor work about the offices of the company. The local manager of the company testified that he had made up the compensation of Bundshu, which was $85 per month, by calculating about $60 as proper compensation for the watchman service and $25 for the janitor work. This witness testified: "I figured twenty to $25 a month extra to have the same man do the janitor work of the office, and make a better job for somebody. In addition to that they would have plenty of time to do the work and make it more economical for us than hiring two men, and would serve to give the fellow something to do and keep him awake and keep busy during the night." The main business of the watchman, as is common in employment of that character, was to guard the plant against intruders. In order to insure the performance of such duties the watchman was required to "ring in" hourly upon instruments placed in the building which were connected with a concern known as the District Telegraph. It was the duty of the latter concern, whenever there was a failure of the watchman to so report, to send a roundsman to find out the reason for the neglect, if it so should happen to be. Bundshu was at work on the night of the 10th of December, 1916, in the Roebling plant. At about 9:30 o'clock a roundsman of the telegraph company visiting the Roebling plant saw Bundshu apparently asleep at a desk in the office. This roundsman rapped loudly upon the door, whereupon Bundshu aroused himself and started to come to the door. On the way

he fell. When the door was opened the roundsman asked Bundshu whether he had been drinking, to which Bundshu first replied ''No.'' The roundsman, however, testified that ''there was whisky on his breath,'' and that he said to Bundshu, ''Do you mean to tell me you haven't had any whisky?'' to which Bundshu replied, ''Oh, I have had a little liquor.'' At 11 o'clock on the same night Bundshu failed to ring in to the telegraph company and a roundsman was sent to the Roebling plant to ascertain the reason for the omission. This roundsman testified that he in turn saw the watchman sitting at a desk with his head lying on his arms, and that he had to pound on the door before being admitted. This roundsman testified that when Bundshu came toward the door to admit him he staggered a little, and that he asked Bundshu what kind of ''water'' he had been drinking, and Bundshu replied, ''Damned good.'' In the opinion of this witness, Bundshu was at the time ''somewhat intoxicated.'' At 1:30 A. M. on the same night Bundshu again failed to ring in, and the same roundsman who visited him at about 9:30 was sent again to the Roebling plant. This witness testified that he reached there about 1:45 and pounded upon the door without being able to secure any response; that he then went to a neighboring plant and aroused the watchman there. The two men took a ladder and by that means gained an entrance to the Roebling plant through a balcony window. On the main floor of the building was a little room used as a wash-room. The door of this room was found to be closed. Upon its being opened the watchman noticed that the air which came from the room was ''bad''; it ''hurt the eyes.'' This room had been tightly closed, and they found a gas stove burning therein. Lying on a bench, with his hat on the floor, was Bundshu. He was dead at the time. An examination of the stove showed that the gas was turned on ''very high,'' but there appeared to be no indication that unconsumed gas was escaping in any other way. The windows of the room were tightly closed. This stove had been placed in the wash-room and had regularly been made use of by the men employed at the plant while changing their clothes in the mornings before going to work. The manager of the plant testified that on the morning following the death of Bundshu he made an examination of the pipe supplying gas to the stove and failed to find any leak. He testified that the stove had been used since

that time as it was used before. He was asked the question as to whether a night watchman employed on those premises had any occasion to be in that room or use the stove, to which he replied: "Absolutely none that I can conceive of, unless he wanted to use the toilet." There was other testimony that the office of the plant was heated during the daytime by steam which proceeded from the heating apparatus in the basement; that this heating plant, after having been used during the day, would ordinarily keep the office warm until about 1 o'clock in the morning. No instructions had been given forbidding any watchman employed on the premises to make use of the steam-heating plant, if he so desired; neither had instructions been given as to the use of the gas heater, except as has been noted in the testimony of the manager, who said that a watchman would have no business in the toilet-room except for the purpose of using the particular facilities therein provided. The use of such facilities, of course, would only consume a brief period of time.

In order to sustain the finding of the commission we must conclude it to be a reasonable proposition fairly indicated by the proof that Bundshu, not being affected by any condition arising from his own misconduct, lighted the heater and that the fumes of the gas overcame him before he was able to protect himself and avoid being suffocated. The expert testimony given before the commission showed that death was due to poisoning produced by carbon monoxide, that being a constituent of illuminating gas in its unburned state. If we are to assume another state of facts, to wit, that Bundshu on the night in question was intoxicated; that neglectful of his duty he went into the wash-room with intent to sleep; that he there lighted the heater and tightly closed the door and windows and lay down upon the bench, and that under such conditions was killed, it must at once be said, we think, that the death was not such an accidental death as was a reasonably probable incident of the employment; and the last conclusion we feel is the one which the evidence, with little uncertainty, points to. But it is not essential to the case of petitioners that the conclusion last suggested be one which the evidence clearly establishes. The burden of proving, as has often been said in the decisions both of our own supreme court and courts of last resort in other states where similar conditions of statute exist, that the injury for which com-

pensation is asked was suffered in the course of the employment and arose out of the employment, is upon the claimant. Where various theoretical conclusions may be drawn from the state of facts established, each being equally plausible, some indicating that the injury may have arisen out of the employment and others that the misconduct of the person injured was the producing cause, then it may not be said that the evidence is sufficient to sustain the case of him upon whom the burden of proof rests. A finding in such a case in favor of the claimant is said to be speculative. In Massachusetts the compensation act is, in those portions of it relating to the matter here being considered, practically identical with the provisions of the California law. Our supreme court has quoted with approval in *Kimbol* v. *Industrial Acc. Comm.,* 173 Cal. 351, [Ann. Cas. 1917E, 312, L. R. A. 1917B, 595, 160 Pac. 150], the language of the supreme court of Massachusetts defining the term "arising out of the employment." *Sanderson's Case,* 224 Mass. 558, [113 N. E. 355], was a case where the industrial commission awarded compensation to a widow where death had apparently been caused by accidental means. The court, in the course of its opinion, declared that many conjectures could be made as to the cause of the fall of the deceased, some of which would sustain the application and others negative any right in the claimant. It concluded that the finding of the commission was based "upon surmise, speculation, and conjecture, and does not rest upon a foundation of proof by a preponderance of the evidence"; the court adding: "It may be the dependent is correct in her contention that the death of the employee was due to a fall from the wagon, but other theories and conjectures are quite as probable." And we may remark that the uncontradicted evidence in this case indicates, if we are to choose between conflicting speculative deductions, that on the night in question the deceased willfully stepped aside from the performance of the duties which his employment laid upon him and invited by direct action on his part the occurrence of the detrimental causes which produced his death. In our opinion, the conclusion of the commission is not supported by sufficient evidence.

As the conclusion just announced necessarily determines the whole matter of th ⁀alidity of the claimant's application, it seems unnecessary to give special consideration to the sec-

ond point urged upon the application for this writ. The second contention is based upon the fact, as shown in evidence, that the claimant here, long prior to her marriage to Bundshu, had been married to two other persons from whom she had not been divorced. The history of her marital experiences were, in brief, as follows: In 1864, when fourteen years of age, she married one Butler, from whom she was soon divorced. In 1868, she married one Morrell, living with him for about a year and a half, when she returned to her parents, but was never divorced from the husband. This man, she testified, she had not since heard from. In 1872 she went through a form of the ceremony of marriage with one Maisey, with whom she lived for about eighteen years and by whom she had two children. She testified that Maisey went away with another woman, and that upon consulting the district attorney in Chicago with the design to compel Maisey to support herself and children, she was advised that her marriage with Maisey was not legal. In 1891 she was married to one Brennan and, after living with him two years, secured a divorce. She then married Bundshu, with whom she was living at the time of the latter's death. The testimony showed that Maisey was still living. There was no testimony as to Morrell being alive or not. The latter was of about the age of twenty-five when he married the claimant. We have presented this statement of facts regarding the second contention, but, for the reasons expressed, do not consider it necessary to announce a conclusion as to the legal proposition involved.

The award is annulled.

Conrey, P. J., and Works, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on February 15, 1918, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 15, 1918, and the following opinion then rendered thereon:

THE COURT.—In denying the application for a hearing in this court, we deem it proper to say that we do not understand the rule to be that if different conclusions may ration-

ally and fairly be drawn from the evidence, one sustaining the right to compensation and the other being opposed thereto, the Industrial Accident Commission is not at liberty to adopt the conclusion favorable to the claim. Of course it is well settled that the commission can do this very thing, and that its conclusion in that regard is beyond the scope of our review. No member of this court disputes this proposition. The justices opposed to granting the application for a hearing in this court are of the opinion that the opinion of the district court of appeal means that in this case there was no substantial evidence reasonably warranting an inference favorable to the claim for compensation, and that any finding to the contrary is necessarily based on mere surmise, speculation, or conjecture, and that when that court speaks of a case "where various theoretical conclusions may be drawn," it is in fact speaking of conclusions based on speculation and conjecture, rather than of inferences reasonably and fairly made from testimony.

The application for a hearing in this court is denied.