[S. F. No. 9624.   In Bank.—August 2, 1921.]

# GEORGE L. EASTMAN COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — MANNER OF DEATH OF AUTO-TRUCK DRIVER—EVIDENCE—FINDING.—In this proceeding to review an award of compensation for the death of an autotruck driver, whose body was found within the line of the trail made by the wheels of the truck, the finding that the deceased was crushed to death by being run over by his own truck is held to be sufficiently supported, although there were no witnesses to the casualty.

[2] ID.—INJURY IN COURSE OF EMPLOYMENT—BURDEN OF PROOF.— Under the Workmen's Compensation Act the burden is upon the applicant to show that the injury arose out of as well as in the course of the employment, since there is no presumption that because an injury occurs in the course of the employment it arises out of or because of that employment.

[3] ID.—EMPLOYEE AFFLICTED WITH HEART TROUBLE — DISABILITY FROM EXERTION.—Compensation is recoverable for disability to an employee afflicted with chronic heart trouble, where such disability is brought on by exertion, or sudden shock, or excitement incident to the employment.

[4] ID.—PROXIMATE CAUSE OF INJURY—DISABILITY FROM SUBJECTIVE CONDITION.—Where the proximate and immediate cause of the injury is from disability arising solely from an idiopathic or subjective condition, there can be no recovery, although the injury clearly occurs in the course of the employment.

[5] ID.—CONDITION OF HEALTH OF EMPLOYEE.—The mere fact that the employee's state of health is such as to expose him to greater risks in performing his duties, or to at times incapacitate him from safeguarding himself from dangers incident thereto, does not render such dangers and risks any less incident to the employment than if the employee were better able to meet them in safety.

[6] ID.—DEATH OF AUTOTRUCK DRIVER—INJURIES ARISING FROM EMPLOYMENT—SUFFICIENCY OF EVIDENCE.—In this proceeding to re-

---

3. Compensation for death or injury from overexertion and excitement, note, 6 A. L. R. 1256.

6. Conclusiveness of finding as to whether injury was one "arising out of and in the course of the employment," note, L. R. A. 1918F, 915.

Effect of fact that pre-existing disease contributed to injury or death on right to recover, note, L. R. A. 1917D, 110, 129.

view an award of compensation for the death of an autotruck driver, whose body was found within the line of the trail made by the wheels of the truck, the finding of the commission that the death was caused from injuries arising from the employment is held to be supported, although an attack of dizziness or unconsciousness from chronic heart trouble may have been a contributing cause to the accident.

[7] Id.—Setting Aside of Findings.—It is only where there is such an entire absence of evidence as renders the findings of the commission unreasonable or in excess of its powers that the court is empowered to set aside its findings.

[8] Id.—Review of Findings.—Where two rational conclusions can fairly be drawn from the evidence, one sustaining and the other opposing the right to compensation, the conclusion adopted by the Industrial Accident Commission is beyond the scope of review.

[9] Id.—Injury in Course of Employment—Findings.—A direct finding in a proceeding for compensation for the death of an autotruck driver, who was run over by the truck, that the injury occurred in the course of and arising out of the employment, can not be disturbed by the negative finding, that in some unexplained manner, which, however, was probably not connected with any heart or other subjective ailment, the driver was caused to be thrown or to fall.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission.   Award affirmed.

The facts are stated in the opinion of the court.

Redman & Alexander and R. P. Wisecarver for Petitioners.

A. E. Graupner and Warren H. Pillsbury for Respondents.

SLOANE, J.—This is an industrial accident case in which the petitioners are seeking to set aside an award of the Industrial Accident Commission on the ground of insufficiency of the evidence to sustain a finding that the injury arose from the alleged employment.

One Tylee W. Ellsworth, who was an autotruck driver in the employment of the petitioner, George L. Eastman Company, a corporation, was found dead at the intersection of Hollywood Boulevard and Camino Real, in the city of Los Angeles.  His truck was standing at the curb of the

latter street with one of the front wheels on the parking between the curb and the sidewalk.

No one witnessed the casualty resulting in his death. Enough can be deduced from the surrounding facts to clearly justify the conclusion that the deceased fell from his driver's seat and was run over by the right hind wheel of the truck. The course of the machine was plainly marked by the track of the tires for some distance back on Hollywood Boulevard in the direction from which it had come.

The decedent Ellsworth driving the truck, in the course of his employment, had approached the place of the accident from the west on the right-hand side of the roadway. There was a slight upgrade in the direction he was driving, and his truck was loaded with decomposed granite, or gravel. At a point opposite the intersection of Martel Street, which connects from the south with Hollywood Boulevard, the truck had suddenly swerved to the left in a sharp curve, or at an angle of about forty-five degrees, and had crossed to the opposite or northerly curb of the boulevard, where the left front wheel came in contact with the curb. The truck then proceeded easterly against the curb for a short distance and then turned slightly out into the boulevard and continued easterly several yards until it reached nearly the center of the intersection of Hollywood Boulevard with Camino Palmero, which latter street connects with the boulevard from the north. Here the truck made another abrupt curve to the left until it came to a stop at the place where found standing on the west line of Palmero Street, some fifteen to twenty-five feet north of its intersection with Hollywood Boulevard.

The dead body of Ellsworth was found at that point where this sudden turn of the machine into Palmero Street began and within the line of the trail made by the right-hand wheels of the truck.

The body was found face down, with the head to the southeast outside the wheel marks. The back was broken, the neck was broken, the ribs were all broken on both sides, the collar-bones on both sides were broken, the right arm was broken, the liver was ruptured, the lungs punctured, the pericardium was punctured, the face had abrasions of the skin.

Upon the facts stated and under the authority of numerous decisions, if the claim rested upon this evidence alone, it could not be doubted that there was justification in the evidence for the findings of the commission that "Tylee W. Ellsworth while employed as a truck driver on June 10, 1919, at Hollywood, California, by defendant George L. Eastman Company . . . sustained injury occurring in the course of and arising out of his employment," and that "in some unexplained manner he was caused to be thrown or to fall from the seat of the truck he was driving and crushed to death under the wheels of the truck." Certainly, in the absence of any other plausible or probable explanation, it might legitimately be inferred from all the circumstances given that the accident arose from some of the natural contingencies attendant upon the driving and operation of the truck. (*Western Grain etc. Co.* v. *Pillsbury,* 173 Cal. 136, [159 Pac. 423]; *Robinson* v. *Western States Gas & Elec. Co.,* 184 Cal. 401, [194 Pac. 39]; *Pacific Portland Cement Co.* v. *Industrial Acc. Com.,* S. F. No. 9152 (writ of review denied); *Rosenberg* v. *Industrial Acc. Com.,* S. F. No. 9269 (writ of review denied); *Sparks Milling Co.* v. *Industrial Acc. Com.,* 293 Ill. 350, [127 N. E. 737]; *Meyers* v. *Michigan Cent. R. Co.,* 199 Mich. 134, [165 N. W. 703]; *Heileman Brewing Co.* v. *Shaw,* 161 Wis. 443, [154 N. W. 631].) In the industrial accident cases above cited in which writs of review were denied by this court, employees were found dead with no witnesses to the accident, but there were traumatic injuries inferentially attributable to the employment, with no proof of other cause of death.

The autopsy in this case, however, disclosed that, while the decedent had been in apparently good health, and neither he nor his family or employers had any knowledge or premonition to the contrary, he was afflicted with a chronic myocarditis, a disease of the heart of long standing, and which the physicians stated was a condition which, while the subject might not know there was anything wrong with him, might at any time cause him to faint or cause sudden death.

While the evidence discloses that on this particular morning of the accident the decedent was in apparently vigorous health and in good spirits, and there is an entire absence of direct evidence of any effects from heart trouble, the pe-

titioners insist that an attack of heart failure affords the only rational or plausible explanation for the loss of control of the truck and the falling from the driver's seat by the decedent. Even so, this inference cannot be carried so far as to discredit the finding that the cause of death was from being run over and crushed by the truck.

Here was an obvious, palpable traumatic cause of death. There is no doubt but that the injury was inflicted and that it was of a nature to cause immediate death. The mere possibility or even probability of the occurrence of an attack of heart failure cannot defeat the conclusion reached by the commission that the truck caused the death, arising from the fact that the employee was alive and active a few minutes before the accident and that when found dead he had just been run over and crushed by a heavily loaded automobile truck.

The evidence of the physicians is no doubt conclusive of the fact that Ellsworth had a diseased heart. Their opinions that he did or did not die from this affliction are of little value, for they are agreed that there was nothing divulged by the autopsy to indicate that death was from heart failure, and they are agreed that the injuries received from his being run over by the truck were such as would cause instant death.

The witness, Dr. Wagner, whatever other possibilities he may have suggested, testified that he offered as his opinion at the autopsy that death was caused by a fracture of the cervical vertebrae in an automobile accident. Dr. Southworth, assistant medical director of the Industrial Accident Commission, answering a hypothetical question giving the subjective conditions of the disease of the heart, and the traumatic results of the injuries from the automobile, stated: "I would say that these findings [as to the automobile injuries] so far overshadow the findings in the heart as to the cause of death, that it would be a larger percentage in favor of those conditions as causing death."

The only pretense of any basis for the theory that the decedent either fainted or died from heart failure while on the truck is the fact that his chronic condition was such that he was liable to such an attack, and that there is no other satisfactory cause shown for the erratic movements of the decedent's truck and for his falling therefrom.

It was, moreover, a fair deduction from the evidence that the decedent was at least in physical control of the truck up to the moment he fell off, and attempting to guide it on its course. Both the surrounding conditions and the testimony of automobile experts indicate that every turn of the truck from the time it left its due course opposite Martel Street until its final turn into Palmero Street must have been caused by manipulation of the steering-wheel and of the gas-throttle. Each turn was against the course of gravity. It was uphill to the north curb of Hollywood Boulevard. The natural course of the truck after running alongside the curb would have held it curb-bound. The turnout toward the center of the street was toward a higher point, and the final swerve into Palmero Street indicated a sudden turn to the left and still uphill. It is, moreover, doubtful, had the driver been dead or inanimate at the time he fell from the truck at this final turn, if he would have fallen under the wheels. The driver's seat is well to the front of the machine on the right-hand side, and it is argued that the conditions were such that in falling inertly the body would have landed well without the track of the wheels in this abrupt left-hand turn, and that it would only be by catching hold of the side of the machine in falling one would be thrown beneath the wheels.

Neither is there any evidence to justify a conclusion that death was the result of the fall itself. True, the decedent's neck was broken and there were some abrasions on his head and face, but the testimony shows that the machine ran over the body from about the waist to the neck, both collar-bones being crushed, and this offers a much more probable explanation of the broken neck than would follow from the effects of the fall.

[1] We are satisfied, therefore, that the finding of the commission that decedent was crushed to death by being run over by the truck cannot be disturbed.

This brings us to the debatable question on the appeal: What was the proximate cause of the death? The injuries from being run over by the truck were the immediate cause, but if, as claimed by petitioners, a fainting spell brought on by the condition of the heart, or any other subjective disability, not arising from the exigencies of decedent's employment as a truck driver, apparently or presumptively

was the cause of his fall under the machine, can the award be maintained in the absence of evidence of some other effective cause arising from the employment?

[2] It must be conceded that the burden is upon the applicant for compensation to show that the injury arose out of as well as in the course of the employment; and there is no presumption, as contended by respondents, that because an injury occurs in the course of the employment it arises out of or because of that employment.

It is quite evident that if decedent had not fallen from the truck he could not have been run over by it, and it is contended, on behalf of petitioners, that the fall is the proximate cause of the injury and must be shown to have some causal connection with the employment to justify compensation in this case.

There is no direct evidence as to what caused the fall from the truck. But excluding the theory that it was caused by a heart attack, as we have already stated it may be reasonably inferred that the driver lost his balance or was thrown out by some casual or inadvertent jolt or jar incident to the traffic of the highway or the abrupt movement of the truck. There are only two theories of the cause of the erratic movements of the truck that would seem to support a legal inference. One is that on entering the intersection of Martel Street, where the first sharp turn to the left was made, decedent thus suddenly diverted the course of his truck to avoid some vehicle coming into Hollywood Boulevard from the south, and that after righting his truck after running into the curb on the north side of the boulevard and starting to regain his position on the right side of the roadway he was confronted by another car from the east, and made the quick turn into Palmero Street to avoid a collision and was thereby thrown out. The only evidence aside from the known exigencies of automobile traffic to support such theory is the fact that at a point about opposite where decedent was killed the fresh tracks of an automobile skidding under set brakes were discovered.

It must be confessed, however, that the erratic movement of the truck, and the absence of any direct evidence of physical conditions on the road to account for it would strongly suggest the probability that the driver was suddenly incapacitated to intelligently steer his truck, and that

its irregular course and the consequent fall was at least contributed to by this condition of the driver.

[3]   Even conceding this to be the case, it does not necesarily follow that the accident cannot be attributed to the employment. If the disability, although arising from a chronic heart trouble, was brought on by any strain or excitement incident to the employment, the industrial liability still exists. Acceleration or aggravation of a pre-existing disease is an injury in the occupation causing such acceleration. (*Fennah* v. *Midland etc. Ry.,* 4 B. W. C. C. 440; *Peoria Ry. Terminal Co.* v. *Industrial Board,* 279 Ill. 352, [116 N. E. 651]; Bradbury on Workmen's Compensation, 385; Elliott's Workmen's Compensation Act, 7th ed., 9; *Fisher's Case,* 220 Mass. 581, [108 N. E. 361]; *In re Madden,* 222 Mass. 487, [L. R. A. 1916D, 1000, 111 N. E. 379]; *In re Brightman,* 220 Mass. 17, [L. R. A. 1916A, 321, 107 N. E. 527].) It can hardly be doubted under this rule that if decedent's incapacity to drive his truck was caused by a heart attack brought on by exertion or sudden shock or excitement incident to his employment on the highway, recovery could be had.

[4]   Where, however, the proximate and immediate cause of the injury is from disability arising solely from an idiopathic or subjective condition, the weight of authority, including the decisions of this state, are against recovery, though the injury clearly occurs in the course of employment. (*Brooker* v. *Industrial Acc. Com.,* 176 Cal. 275, [L. R. A. 1918F, 878, 168 Pac. 126]; citing *Van Gorder* v. *Packard Motor Car Co.,* 195 Mich. 588, [L. R. A. 1917E, 522, 162 N. W. 107]; *Butler* v. *Burton-on-Trent Union,* 5 B. W. C. C. 355; *Frith* v. *Louisianian,* 5 B. W. C. C., L. R. [1912] 2 K. B. Div. 155; *Rodger* v. *Paisley,* 5 B. W. C. C. 547; *Collins* v. *Brooklyn etc. Co.,* 171 App. Div. 381, [156 N. Y. Supp. 957]; *McCoy* v. *Michigan Screw Co.,* 180 Mich. 454, [L. R. A. 1916A, 323, 147 N. W. 572]; *Klawinski* v. *Lake Shore etc. Co.,* 185 Mich. 643, [152 N. W. 213].)

It will be noticed in all of these cases the injury or death was the direct result of a fall induced by some subjective condition of the injured party and without any intervening or contributing cause connected with the employment.

Thus in *Brooker* v. *Industrial Acc. Com., supra,* the decedent was working on a scaffold thirty-nine feet from the

ground.   He fell and died from the result of the fall.   He was subject to epileptic fits.   It was held that the probable cause of the fall was an epileptic fit, and that this was the proximate cause of death.

In the case before us it must be remembered that the cause of the fall, if accompanied by a heart attack, was the result of such heart trouble, combined with the irregular movement of the truck in suddenly being turned from its course, and that the immediate cause of death was not from the fall, but resulted from being run over by the truck.

There is nothing to indicate that the heart attack would have proved fatal, or that it entirely incapacitated the driver, or that the fall produced serious injury, or that the decedent would not be alive at the present time, if it had not been for whatever combination of circumstances brought him under the wheels of the moving truck, the instrument of his employment, after falling or being thrown from his seat.

A case very closely in point sustaining respondents' rights in the premises is *Carroll* v. *What Cheer Stables Co.*, 38 R. I. 421, [Ann. Cas. 1918B, 346, 96 Atl. 208].   The facts are very closely parallel with the facts here.   A hack driver while engaged in his employment was presumed to have suffered an attack of dizziness or unconsciousness, induced by hernia, hardening of the arteries, and Bright's disease. There was evidence tending to show that his horses, being thus out of control, ran against the curbstone and the driver was thrown out and injured.   The court held that the evidence did not show that the fall was caused solely by the workman's diseased condition, but was contributed to by the subsequent movements of the vehicle running into the curb, and that the accident was one arising out of the employment.   Such was the precise condition here.   Mr. Justice Shaw, in the opinion of this court in *Brooker* v. *Industrial Acc. Com.*, *supra*, reviewing the case just cited, recognizes the distinction between that and the Brooker case which we have pointed out as applicable here.   Although the unsafe movement of the team was apparently caused by the driver's illness, it was the subsequent lurching of the cab that at least contributed to the fall.

The case of *Wicks* v. *Dowell*, L. R. [1905] 2 K. B. Div. 225, goes further in sustaining industrial accident liability

in such cases than is warranted under the decisions in this state, but we quote from that case the reasoning on which a distinction is made between the immediate and remote cause of the injury as connecting it with the employment.

In the case cited the deceased was siezed with an epileptic fit while standing on a wooden stage in a ship close to the hatchway. By reason of the fit he fell into the hold and was injured by the fall. The court held that while the cause of the fall was the fit, that the cause of the injury was the fall that was incident to the employment over this open hatchway. In the case before us the alleged heart trouble may have caused the driver to lose intelligent control of the truck, but this was not the immediate cause of the injury but only a contributing cause, and the reasoning of the court in the Wick's case is peculiarly applicable to the conditions here.

The court says: "Then did the accident arise out of the man's employment? When we get rid of the confusion caused by the fact that the fall was originally caused by the fit and the confusion involved in not dissociating the injury, and its actual physical cause from the more remote cause, that is to say, from the fit, the difficulty arising from the words 'out of the employment' is removed. How does it come about in the present case that the accident arose out of his employment? Because by the conditions of his employment the workman was bound to stand on the edge of what I may style a precipice, and if in that position he was siezed with a fit he would almost necessarily fall over. If that is so, the accident was caused by his necessary proximity to the precipice, for the fall was brought about by his necessity for his standing in that position. Upon the authorities I think the case is clear; an accident does not cease to be such because its remote cause was the idiopathic condition of the injured man; we must dissociate that idiopathic condition from the other facts and remember that he was obliged to run the risk by the very nature of his employment, and that the dangerous fall was brought about by the conditions of that employment. I think, therefore, that the present case comes within the purview of the Workmen's Compensation Act. . . .

"Cozens-Hardy, L. J. I agree, and have little to add. It seems plain to me on the authorities that what happened here was an 'accident.' It is also plain, and indeed is not

contested, that the accident happened in the course of the employment; the only difficulty is whether it arose 'out of the employment'; on the whole I am of opinion that it did. If I could adopt the view that has been pressed upon us, that the employer is not liable for the remote consequences of a disability which the workman brings with him to his work, I should come to a different conclusion; but I think the truer view is that a man always brings some disability with him; it may be a disability arising from age; it may be of some other nature. A workman who is put in a dangerous position in order to do his work is more liable to an accident by reason of the disability which he brings with him than he would otherwise be. Again, an old man is inherently more likely to meet with an accident than a young one, but an employer could not excuse himself on the ground of the man's age. The same consideration applies to a tendency to illness or to a fit; and if a man with such a tendency is told to go to work in a dangerous position and there meets with an accident, the accident none the less arises out of his employment because its remote cause is to be found in his own physical condition.''

[5] The mere fact that the employee's state of health is such as to expose him to greater risks in performing his duties, or to at times incapacitate him from safeguarding himself from dangers incident thereto, do not render such dangers and risks any less incident to the employment than if the employee were better able to meet them in safety.

As is said in *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, [97 Atl. 1020]: ''By the terms of our compensation act, compensation is not made to depend upon the condition of health of the employee, or from his freedom from liability to injury through a constitutional weakness or latent tendency. It is awarded for personal injuries 'arising in the course of and out of the employment' and for an injury which is a hazard of that employment.''

As Chief Justice Rugg points out in *Re Madden*, 222 Mass. 487, [L. R. A. 1916D, 1000, 111 N. E. 379]: ''It is the hazard of the employment acting upon the particular employee in his condition of health, and not what the hazard would be if acting on a healthy employee . . . Whatever predisposing physical condition may exist, if the employment is the immediate occasion of the injury, it arises out of the employment because it develops within it.''

[6]  Under the construction of the law as we have stated it, even if it appears that an attack of dizziness or unconsciousness from heart trouble was a contributing cause to the accident, the finding of death from injuries arising from the employment finds support under the evidence. [7] It is only where there is such an entire absence of evidence as renders the findings of the commission unreasonable or in excess of its powers that this court is empowered to set aside its findings. (Workmen's Compensation Act, sec. 67b, Stats. 1917, p. 875; *Walker* v. *Industrial Acc. Com.,* 177 Cal. 737, [L. R. A. 1918F, 212, 171 Pac. 954]; *Cardoza* v. *Pillsbury,* 169 Cal. 106, [145 Pac. 1015].)

[8]  In denying an application for a hearing in *Roebling Sons Co.* v. *Industrial Acc. Com.,* 36 Cal. App. 15, [171 Pac. 987], this court has said that where two rational conclusions can fairly be drawn from the evidence, one sustaining and the other opposing the right to compensation, the conclusion adopted by the commission is beyond the scope of our review.

The law and the facts of this case present such a condition.

[9]  Petitioners complain of the insufficiency of the finding as to the source of the injury resulting in the employee's death, in that the commission in its finding recite that death was caused "In some unexplained manner, which, however, was probably not connected with any heart or other subjective ailment, he was caused to be thrown or to fall, . . . " This by itself would be an inadequate finding that the injury arose from the employment, but in addition to this, as is elsewhere quoted in this opinion, the commission expressly found that the injury occurred "in the course of and arising out of the employment." This negative statement, therefore, as to the unexplained manner of the happening and the probable absence of heart failure cannot disturb the direct finding of the ultimate fact.

The award is affirmed.

Lawlor, J., Lennon, J., Angellotti, C. J., and Shurtleff, J., concurred.

Rehearing denied.

All the Justices concurred.