[Civ. No. 3321. Third Appellate District.—June 28, 1927.]

MARY BORBA MELLO et al., Applicants, v. INDUS-TRIAL ACCIDENT COMMISSION et al., Respondents.

Bradford, Cross & Prior for Petitioners.

Frank J. Creede and G. C. Faulkner for Respondents.

FINCH, P. J.—This is an application for a writ of *certiorari* to review an order of the Industrial Accident Commission denying compensation to the petitioners, the surviving wife and children of Antonio Mello, deceased, who, at the time of his death, was in the employ of St. John's Park Company as a prune picker.

The Commission found: "The deceased was found drowned in a two-foot pool of water on the premises of the employer . . . and on autopsy examination it was discovered

that he also had had a beginning pneumonia. The drowning of deceased was not due to injury arising out of his employment with said employers.'' In this opinion no weight is given to the finding that Mello ''had a beginning pneumonia.'' The only question for determination is whether there is sufficient evidence to support the finding that the drowning ''was not due to injury arising out of his employment.'' The evidence bearing upon this question is meager. The record contains a map of the premises, apparently conceded to be drawn according to a scale, but the scale is not given. The following is a copy of such parts of the map as are material to the question under discussion (see page 235):

The places and objects delineated on the map will be referred to by the names appearing thereon. The whole area shown on the map is in orchard. On the day of the accident, two of the Mello children, Lillian and one of her brothers, the latter being sick, remained in the Mello house while Mr. and Mrs. Mello and some of the children went to the ''old orchard'' to pick prunes. During the forenoon the work in that orchard was completed and the pickers then went to the place marked ''point of work,'' for the purpose of picking prunes at that place. In going there Mrs. Mello and some of the children followed the road beside which the office is situated. It does not appear by what course Mr. Mello made the trip. Thereafter, about 9:30 o'clock of that forenoon, Mello left, saying that he was going back to the house for a shaking pole and his wife asked him to give the sick boy some medicine. Louis, another son, asked his father to bring a watermelon for lunch. Mrs. Mello testified that Lillian said that Mr. Mello took the shaking pole and a watermelon from the house and went back to the field. His body was found in the drain pool about 3 o'clock in the afternoon of that day. The shaking pole and the watermelon were found in the same pool. While the water was shallow, as found by the Commission, in the part of the pool in which the body was lying, it was eight feet deep in some other parts. The water in the pool was the drainage from the dehydrator and contained a small percentage of lye, enough ''to make a man's eyes sting,'' but ''it was not strong enough to have any effect on your hands.'' The position of the body was such as to indicate

that the man had fallen into the deeper part of the pool and had drowned while attempting to crawl out. The record is wholly silent as to why Mello took this roundabout way to go from his house to the place of his work. A witness, who is secretary and one of the managers of the St. John's

Park Company, testified that "the prune pickers are supposed not to pick melons, but it is not looked upon in the nature of any particular misdemeanor. They are simply asked not to. . . . They are not supposed to pick them, but, however, it is very generally done. They all do it." Louis had put the melon in the Mello house the evening before the accident. It is possible that Mello kept away from the road on his return from his house in order to avoid being seen with the melon by anyone in the office. Of course, the fact that he took a melon belonging to his employer is wholly immaterial except as it may explain his purpose in taking the course he pursued through the orchard. The burden was upon the petitioners "to show that the injury arose out of as well as in the course of the employment; and there is no presumption . . . that because an injury occurs in the course of the employment it arises out of or because of that employment." (*G. L. Eastman Co.* v. *Industrial Acc. Com.*, 186 Cal. 587, 593 [200 Pac. 17, 19].) The evidence does not show that Mello had any duty to perform in the vicinity of the pool or that it was necessary or even convenient for him to pass by the pool on his way back to work. A justifiable inference from the evidence is that he went out of the usual course for purposes of his own and not to discharge any duty of his employment. In a case similar in principle it is said: "An employer cannot be held liable under our compensation act (Stats. 1913, p. 279, as amended) unless the accident arises out of and in the course of the employment, and of course it devolves on a claimant to establish this fact by evidence from which such a conclusion is inferable." (*Casualty Co.* v. *Industrial Acc. Com.*, 176 Cal. 530, 533 [169 Pac. 76].) If it be conceded that the evidence is sufficient to support a finding that the accident arose out of the employment, it cannot be held that the evidence is insufficient to support the finding made by the Commission, especially in view of the fact that the burden of proof was on petitioners.

The order is affirmed.

Thompson, J., *pro tem.,* and Plummer, J., concurred.